## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

**CHRISTOPHER POIRIER**,

           Plaintiff,

vs.

**OFFICER LEAH WESTRATE**, individually,
**OFFICER JEFF STOLL**, individually,
**OFFICER NATE DORNBOS**, individually,
**BARBARA BERGERS,** individually,
**DEPUTY BRIDGET SCHICKINGER**, individually,
**JOSHUA GRANT**, individually and in his professional capacity,
**ABSOLUTE SECURITY AND PROTECTIVE SERVICES, LLC**,
     a Michigan Limited Liability Company,
     jointly and severally.

Case No. 12-cv-01056-RJJ
Hon. Robert Jonker

**BRIEF IN OPPOSITION TO DEFENDANT SCHICKINGER'S MOTION FOR SUMMARY JUDGMENT**

_____/

Joshua A. Blanchard (P72601)
Keeley D. Heath (P68661)
**MIEL & CARR, PLC**
Attorneys for Plaintiff
125 W Main St
PO Box 8
Stanton, MI 48888
989-831-5208 / fax: 989-831-8854
josh@mielcarr.com

Peter A. Smit (P27886)
**VARNUM RIDDERING SCHMIDT & HOWLETT LLP**
Attorneys for Defendants Westrate, Stoll, Dornbos, & Bergers
PO Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
pasmit@varnumlaw.com

Douglas W. Van Essen (P33169)
**SILVER & VAN ESSEN, PC**
Attorneys for Defendant Schickinger
300 Ottawa Ave., NW, Ste. 620
Grand Rapids, MI 49503
(616) 988-5600
dwv@silvervanessen.com

Emily Ballenberger (P64410)
**ZAUSMER KAUFMAN AUGUST CALDWELL & TAYLER PC**
Attorneys for Defendants Grant & Absolute Security and Protective Services, LLC
31700 Middlebelt Rd., Ste. 150
Farmington Hills, MI 48334
(586) 783-7621
eballenberger@zkact.com

_____/

## BRIEF IN OPPOSITION TO DEFENDANT SCHICKINGER'S MOTION FOR SUMMARY JUDGMENT

1

## STATEMENT OF FACTS

On the early morning of February 4, 2012, Officer Jeff Stoll, while on uniform patrol, went to Hillcrest Apartments to attempt to make contact with Brian Thompson (PR[1] at 10). Hillcrest Apartments are located at 10485 48th Avenue, Allendale, Ottawa County, Michigan. (Defendant Schickinger's Answer at ¶15, ECF Event #11) Officer Stoll's intention was to determine whether Brian Thompson was in compliance with the terms of his probation (PR at 10). Officer Stoll and the officers who later arrived at the apartment did not obtain, nor seek to obtain, a warrant to search or arrest at any time. (Tr. Schickinger[2] at 13:6-8).

Upon arrival at the apartment complex, Officer Stoll walked to the back side of the apartment building (PR at 10). On the back side of the apartment there is a deck elevated approximately six feet above the ground (Photos of deck, attached as Plaintiff's Exhibit 3). The deck is located within an area of landscaping containing stones, bushes, and air conditioning units. *Id.* The deck is encapsulated by a railing and vertically oriented 2 X 6 privacy boards. *Id.* The privacy boards are staggered and prevent a view of the interior of the deck. *Id.* There is an approximate four inch gap between the base of the deck and the bottom of staggered 2 X 6 privacy boards. *Id.*. There is no access from the ground; the only means of accessing the deck is through sliding glass door that leads directly into the living room/kitchen area located on the second level of the apartment. *Id.*

Officer Stoll claims that he viewed certain items within the apartment from the back of the building. (PR at 11). It is clear that Officer Stoll would have been unable to see the alleged items within the apartment from a lawfully obtained vantage point. (Exhibit 3).

---

[1] References to "PR" refer to the statements of Defendant Stoll contained within his police report dated February 4, 2012 and attached as Exhibit 1.
[2] References to "Tr. Schickinger" refer to Defendant Schickinger's deposition testimony on February 15, 2013, which is attached as Exhibit 2.

Officer Stoll then called for backup. (PR at 10). He contacted Officer Westrate, Deputy Schickinger, and Officer Dornbos. (PR at 10). The officers created a perimeter around the apartment (PR at 11). Officer Westrate began knocking at the front door of the apartment. (PR at 10).  No one answered the front door. (Tr. Schickinger at 17:19-23). Officer Stoll returned to the back side of the apartment,  climbed onto the air conditioning unit, pulled himself over the deck's railing and on to the deck, and shined his flashlight into the apartment. (Tr. Poirier[3] at 57:9-10). Officer Stoll did not have permission or legal authority to climb on to the deck. From this viewpoint, Officer Stoll claims that he observed evidence of alcohol and smoking devices inside the apartment. (PR at 11).

Eventually, the officers forced entry through the front door of the apartment with the assistance of Joshua Grant, an employee of Absolute Security and Protective Services, LLC. (SR[4] at 2).  The officers did not have permission from an occupant (Tr. Schickinger at 30:12-25) or a warrant (Tr. Schickinger at 29:22-24)  when they entered the apartment. Upon entry into the apartment the officers, including Deputy Schickinger, began searching the apartment. (Tr. Schickinger at 17:24-25, 18:1-4). Each resident of the apartment has their own private bedroom with a locking door that is not generally accessible to the other residents of the apartment. (Tr. Poirier at 54:1-23).

During the search of the residence, the officers located Christopher Poirier's house keys on a lanyard.  (Tr. Schickinger at 21:16-18). The officers then used these keys to gain access into Mr. Poirier's locked bedroom door on the third floor of the apartment. (Tr. Schickinger at 21:21-23).

---

[3] References to "Tr. Poirier" refer to the page and line numbers from Mr. Poirier's deposition testimony on January 29, 2013, which was attached as Exhibit A to Defendant Schickinger's Brief in Support of Motion for Summary Judgment.
[4] References to "SR" refer to the statements of Defendant Grant and Absolute Security as contained in the security report dated February 4, 2012, which is attached as Exhibit 4.

Upon entry into Mr. Poirier's bedroom, the officers forced entry into a closed closet door. Upon entry through this closed closet door, the Officers located Mr. Poirier, his overnight guest Danielle Jones, and two other male guests of Mr. Poirier (PR at 11). The officers seized Mr. Poirier and detained him against his will while they conducted further investigation. (Tr. Schickinger at 19:9-12).

Officer Stoll issued Mr. Poirier an appearance citation for violating Mich Comp Laws §436.1703, Minor in Possession of Alcohol. (PR at 13). After review, the Ottawa County Prosecutor dismissed this charge.(Tr. Poirier at 23:8-9).

## <u>SUMMARY OF ARGUMENT</u>

Qualified immunity is not available where a constitutional right has been violated, where that right is clearly established, and where the violation was objectively unreasonable given the law and the information available to the Deputy who violated the right. Deputy Schickinger and others entered and searched the plaintiff's apartment without a warrant. No valid exception to the warrant requirement was present. No occupant of the home provided consent to search. The actions of Deputy Schickinger and the other officers violated Plaintiff's Fourth Amendment rights. The right to not have one's home searched without a warrant is firmly established. A reasonable officer with the knowledge that Deputy Schickinger had would not have proceeded with the search before obtaining a warrant.  Contrary to the claim of Deputy Schickinger, there is no relaxed standard for back up police officers who participate in the constitutional violation.

## ARGUMENT

### *STANDARD OF REVIEW*

42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

Qualified immunity protects government officials performing discretionary functions from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818; 102 S.Ct. 2727, 2738; 73 L.Ed.2d 396 (1982). "The right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640; 107 S.Ct. 3034, 3039; 97 L.Ed.2d 523 (1987).

Essentially, qualified immunity provides protection when the actor is performing a discretionary duty, unless that actor violates a clearly established statutory or constitutional right that a reasonable person would have known about.

Determining whether qualified immunity applies is a three step process. "First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would

have known. Third, we determine whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

The first step, whether a constitutional violation has occurred, is dependent upon the facts. The facts, viewed in a light most favorable to the plaintiff, must show that a constitutional violation has occurred. *Id.* The second step is more complicated. "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007)). "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Id.* (quoting *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002)). This does not mean that the factual situation presented must be identical to a previous case; it only means that, in light of pre-existing law, the acting official be on notice that his actions are unlawful. *Id.*

Once it has been determined that a right has been violated and that right is firmly established, the third step is to determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of that right. *Feathers*, 319 F.3d at 848 (6th Cir. 2003). It is possible for a firmly established right to be violated, but for the actor to have still acted reasonably, as in *Feathers*, where officers reasonably believed that a Terry stop was reasonable, even though it was not. *Feathers,* 319 F.3d 843 (6th Cir. 2003)*.* The question, then, is whether a reasonable actor believed that his actions were lawful considering clearly established law and the information that he possessed. *See Holzemer*, 621

F.3d at 527 (6th Cir. 2010).

**I. A CONSTITIONAL VIOLATION OCCURRED WHEN DEPUTY SCHICKINGER ENTERED THE PLAINTIFF'S HOME WITHOUT A WARRANT OR A VALID EXCEPTION TO THE WARRANT REQUIREMENT**

The first step, whether a constitutional violation has occurred, is dependent upon the facts. The facts, viewed in a light most favorable to the plaintiff, must show that a constitutional violation has occurred. 319 F.3d at 848 (6th Cir. 2003). The Fourth Amendment protects against unreasonable searches and  seizures. The Supreme Court has recognized that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States Dist. Ct*., 407 U.S. 297, 313; 92 S. Ct. 2125; 32 L. Ed. 2d 752 (1972). For that reason, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559; 124 S. Ct. 1284; 157 L. Ed. 2d 1068 (2004). Thus, a warrantless search or seizure inside a home by a law enforcement officer violates the Fourth Amendment unless an exception to the warrant requirement applies. *See Brigham City v. Stuart*, 547 U.S. 398, 403; 126 S. Ct. 1943; 164 L. Ed. 2D 650 (2006).

**A. There was no valid exception to the warrant requirement in this case.**

The defense seems to argue that probable cause is an exception to the warrant requirement, and that Deputy Schickinger believed that that exception applied. There is simply no such exception. Probable cause is not an exception to the warrant requirement. Probable cause is a requirement necessary to obtain a warrant, not an exception to getting a warrant. "To excuse the failure to obtain a warrant merely because the officers had probable cause and could have inevitably obtained a warrant would completely obviate the warrant requirement of the fourth amendment." *US v Johnson,* 22 F.3d 674, 683 (6th Cir. 1994), quoting *United States v. Echegoyen*, 799 F.2d 1271, 1280 n.7 (9th Cir. 1986).

The case cited by the defense in support of this argument, *Wood v. Kessler*, 323 F.3d 872 (11th Cir. 2003) is a false-arrest case, not a search case. The holding from *Wood* that an arrest doesn't violate the 4th Amendment and an officer is entitled to qualified immunity where there is "arguable probable cause" is not relevant to the factual scenario at hand.

The defense also seems to argue that there was contraband in plain view, and that this is an exception to the need to obtain a warrant. This rule is also not correctly applied. If contraband is in plain view, law enforcement officers may seize it. *Kentucky v. King,* 563 US ____; 131 S. Ct. 1849, 1856; 179 L. Ed. 2d 865 (2011). However, the officer must lawfully be at the place from which the evidence is seen. *Id.* In this case, Officer Stoll had to unlawfully go to the back side of the apartment, lift himself up, peek through a space in the deck, and eventually climb on to an air conditioning unit to get on to the deck. Furthermore, the incriminating nature of the contraband must be immediately apparent. *Horton v. California*, 496 U.S. 128, 136; 110 S. Ct. 2301; 110 L. Ed. 2D 112 (1990). Officer Stoll claims to have seen cans of beer and smoking devices (PR at 11). The incriminating nature of these devices is not immediately apparent; the officers did not know whether everyone in the apartment was under 21 until they had entered and detained them, and smoking devices are commonly used for legal products such as tobacco.

Most importantly, the plain view exception does not apply because it only applies to the seizure of the contraband that was in plain view. "The 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Horton* at 136. Even if the Court finds that Officer Stoll was lawfully in the place where he claims to have seen contraband, and even if the court finds that the alcohol and smoking devices' criminal nature was apparent, the plain view exception does not allow for a warrantless search, only a warrantless seizure.

8

Because the Deputy lacked a warrant to search the home and because the "probable cause" and "plain view" exceptions advanced by the Deputy are inapplicable here, the only way that she could have legally entered the apartment was if there had been consent to the search.

**B.      There was no actual consent to the search given by anyone inside the home or with actual or apparent authority.**

A search conducted pursuant to voluntarily obtained consent is a well-recognized exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219; 93 S. Ct. 2041; 36 L. Ed. 2d 854 (1973). The consent to search must be "voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009) (citing *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999)). The burden to establish that the exception applies is on the officer invoking consent. *See Bumper v. North Carolina*, 391 U.S. 543, 548; 88 S. Ct. 1788; 20 L. Ed. 2d 797 (1968); *Tarter v. Raybuck*, 742 F.2d 977, 980 (6th Cir. 1984) (burden on school official claiming student consented to search).

The defense argues that the plaintiff consented to the warrantless search by voluntarily living with Thompson, who defendant claims consented to the warrantless search through the terms of his probation. This is not correct; Thompson did not consent to the warrantless search through the terms of his probation. The defense cites *United States v. Knights*, 534 U.S. 112; 122 S.Ct. 587; 151 L.Ed.2d 497 (2001), to support the claim that Thompson had consented to any law enforcement officer searching his residence without a warrant. Contrary to the assertion of Deputy Schickinger, the *Knights* Court specifically refused to rule on the issue of whether a probation order's search clause was consent.

In *Knights*, an officer searched Knights' apartment without a warrant. *Id*. at 115. Knights was on probation, and the terms of that probation stated that Knights must "submit his . . .

9

person, property, place of residence, vehicle, personal effects, to search at anytime, *with or without a search warrant,* warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *Id.* at 114 (emphasis added). However, the court did not consider consent when it reached its decision, stating: "We need not decide whether Knights' acceptance of the search condition constituted consent . . . , however, because we conclude that the search of Knights was reasonable under our general Fourth Amendment approach . . . ." *Id.* at 118.

The Court allowed the warrantless search because of Knights' diminished expectation of privacy as a probationer and the fact that the officer's search was supported by reasonable suspicion. *Id.* at 120-122. In holding that the search was reasonable under the circumstances, the Court found it important that a California Judge had determined that Mr. Knights needed to be subject to the warrantless search provision. *Id.* at 119-120. In the instant case, no such determination was made that Plaintiff's roommate, Mr. Thompson, should be subject to warrantless search.

There is an important distinction between the terms of Knights' probation and the terms of Thompson's probation. The terms of Knights' probation stated that Knights must "submit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, *with or without a search warrant,* warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *Id.* at 114 (emphasis added). The terms of Thompson's probation state that Thompson must "submit to a search of residence . . . as requested by any police or probation officer." (Probation Orders, attached as Plaintiff's exhibits 5-7). The terms of Thompson's probation order do not state that he must consent to a search without a warrant like Knights'. This important distinction is emphasized in *United States v. Carnes*, 309 F.3d 950 (6th Cir. 2002).

In *Carnes*, the court emphasizes the fact that the terms of Knights' probation specified

"with or without a warrant" and found it important that the terms of Carnes' probation did not. *Id.* at 962. The court states that, "comparing these facts with those in *Knights*, it is clear that Carnes did not bargain away the scope of rights that Knights did" and that, "unlike Knights's agreement, nothing in Carnes's agreement shows that he would expect the police to be able to search him without probable cause or a warrant." *Id.* The distinction present in *Carnes* is also present in this case: Plaintiff's roommate's probation order did not subject him to warrantless search and no judge had made a determination that the roommate should be subject to a warrantless search.

Accordingly, Thompson did not consent to the officers entrance and search of the apartment, and so the plaintiff could not have vicariously consented by living with Thompson. Furthermore, the search of Plaintiff's home was not reasonable under the circumstances because no judge had made a determination that the home should be subject to search without a warrant.

**C.      The roommate's probation order in effect at the time of the search did not actually provide that the roommate must submit to a search.**

Even if this Court finds the terms of Thompson's probation order persuasive, the order in effect at the time of this search did not contain a search provision. Thompson was placed on probation to the Hon. Kenneth Post on May 7, 2011. (Exhibit 5). On that same day, Thompson was made subject to a probation order which contained the search provision referenced above. However, on January 25, 2012, Mr. Thompson was sentenced on a probation violation and an Amended Probation Order was entered. (Exhibit 6). This new order did not contain a search provision. This is the order that was in effect when the search occurred on February 4, 2012.

It is clear that this Amended Probation Order did not intend to incorporate the terms of the first order because, on March 14, 2012, Thompson again violated his probation and yet another amended probation order was entered. (Exhibit 7). This new order provided for terms

that were included in the first order but then removed by the second order. Both the first (Exhibit 5) and third (Exhibit 7) probation orders contained provisions that the probationer was required to submit to drug and alcohol testing at the direction of the probation officer. The second order (Exhibit 6) contains no such requirement.

Because the Ottawa District Court added a term to the third probation order that was present in the first order, but not the second order, the only reasonable conclusion is that each successive order replaced the prior order rather than just adding additional terms. Further, there was nothing in any of the "Amended" probation orders that incorporated the terms of the previous probation order.

Even if it is found that the search provision in Thompson's first probation order allowed for a warrantless search, the terms of that probation order were not in effect at the time of the search; they had been replaced with the Amended Probation Order, which does not include the search provision.

**II.      THE DEPUTY VIOLATED A CONSTITUTIONAL RIGHT WHICH IS CLEARLY ESTABLISHED WHEN SHE ENTERED THE PLAINTIFF'S HOME WITHOUT A WARRANT OR A VALID EXCEPTION TO THE WARRANT REQUIREMENT.**

Mr. Poirier's right to not have his home searched without a warrant was clearly established when Deputy Schickinger searched his home without the benefit of a warrant.

"For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Holzemer* 621 F.3d at 527 (6th Cir. 2010) (quoting *Leonard*, 477 F.3d at 355 (6th Cir. 2007)). "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Id.* (quoting *Risbridger* , 275 F.3d

12

at 569 (6th Cir. 2002)). This does not mean that the factual situation presented must be identical to a previous case; it only means that, in light of pre-existing law, the acting official be on notice that his actions are unlawful. *Id*.

"The Fourth Amendment right to be free from warrantless searches within the home is clearly established." *El Bey v. Roop*, 530 F.3d 407, 421 (6th Cir. 2008). "[I]t was also clearly established that the plain view exception cannot serve to justify an otherwise unconstitutional search." *Shamaeizadeh v. Cunigan,* 38 F.3d 535, 550 (6th Cir. 2003).

**III.      DEPUTY SCHICKINGER'S ACT OF ENTERING THE HOME WITHOUT A WARRANT AND WITHOUT VERIFYING THE ALLEGED PROBATION TERM OR DETERMINING WHETHER ANOTHER OFFICER HAD DONE SO WAS OBJECTIVELY UNREASONABLE.**

The question of whether the officer's action was objectively reasonable comes down to whether a reasonable actor believed that his actions were lawful considering clearly established law and the information that he possessed. *See Holzemer*, 621 F.3d at 527 (6th Cir. 2010).

A reasonable officer would know that a warrantless search violates the plaintiff's constitutional rights. *Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995). The defense cannot argue that the officers in this case were unaware of the potential need for a warrant because the officers discussed the need for a warrant before deciding to enter the apartment anyway. Deputiy Schickinger participated in this conversation and was aware of the situation. (Tr. Schickinger at 31:18-25). Deputy Schickinger admits that, in this conversation, she suggested that the officers could enter the apartment on plain view, with the alleged warrantless search clause, or they could obtain a warrant. (Tr. Schickinger at 32:1-6).

It was unreasonable for Deputy Schickinger to rely on a search term in a probation order in this matter because she testified that she never actually verified that the search term in

13

question existed in a probation order (Tr. Schickinger at 12:14-16) and she doesn't know whether the other officers did so either (Tr. Schickinger at 41:4-6). She testified that Officer Stoll had told her that probation orders for students usually had a warrantless search clause. (Tr. Schickinger at 11:6-14). In describing her familiarity with those clauses, she states that it allows the search of a vehicle and the taking of a breath test. (Tr. Schickinger at 12:3-8). Because she did not know if the probation order had a warrantless search clause and because she took no steps to ensure that someone had verified that such a clause was present, her reliance on this nonexistent clause was unreasonable.

A reasonable officer in her position, having been informed by Officer Stoll of what he had seen where, and knowing that a warrantless search violates the plaintiff's constitutional rights, would not have proceeded with the search without first obtaining a warrant.

**IV.      DEPUTY SCHICKINGER IS TO BE HELD TO THE SAME STANDARD AS THE OTHER OFFICERS IN THIS CASE.**

The defense argues that Deputy Schickinger should be held to a relaxed standard because she was a "backup officer". There is simply no legal basis for this argument. The issue is touched on in *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989). In *Melear*, the defendant officers kicked in several doors and performed unconstitutional searches of several apartments, including the plaintiffs'. *Id.* at 1181. One of the defendants argued that he was not liable because he did not kick in the door, did not search the room, and "participated less actively than [the others] and was merely a 'back-up participant' in the . . . search". *Id.* at 1186. The 5th Circuit stated that the officer was still a "full, active participant in the search, not merely a bystander" because he was still present at the door and armed with his gun. *Id.* He still "performed police functions that were integral to the search." *Id.*

This distinction is also made in *Creamer v. Porter*, 754 F.2d 1311 (5th Cir.1985). In this

14

case, defendant officers performed a search that extended far beyond the limits imposed by a search warrant. *Id.* at 1315. Two of these defendants were officers from another department who were present due to jurisdictional concerns. *Id.* at 1314. The lower court had dismissed these two defendants, claiming that they were "really no more than bystanders who had little active participation in the search ... they were hardly more than a jurisdictional formality." *Id.* at 1316. The court affirmed the dismissal of one of these two defendants because he had been absent for the majority of the search and was present only during the portion of the search that was legal. *Id.* The court reversed the dismissal of the other of these two defendants because he had been present during, and had been witnessed participating in, the illegal portion of the search. *Id.*

This Court should hold, consistent with the 5th Circuit, that backup officers are not held to a separate standard for qualified immunity unless they were a mere bystander. This requires that they are not present and performing police functions or participating in the search. In this case, Deputy Schickinger was more than a mere bystander. Much like the officers in *Melear*, she was present for the entire duration of the search and performing police functions such as searching the basement (Tr. Schickinger at 17:24-25, 18:1-4) and securing the scene after the occupants were assembled in the living room (Tr. Schickinger at 24:1-2, 25:5-8). Accordingly, Deputy Schickinger is held to the same standard as any officer, backup or not, because she was clearly more than a mere bystander.

## **CONCLUSION**

This Court should conclude that Deputy Schickinger is not entitled to qualified immunity and she should not be dismissed from the case.

Respectfully submitted:

Dated: March __31__, 2013

_/S/ Joshua A. Blanchard_____
Joshua Blanchard (P72601)
**MIEL & CARR, PLC**
Attorneys for Plaintiff
125 W Main St
PO Box 8
Stanton, MI 48888
989-831-5208
josh@mielcarr.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2012, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Michigan by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

Dated: March __31__, 2013

_/s/ Joshua A. Blanchard_____
Joshua Blanchard (P72601)

16