UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHRISTOPHER POIRIER,

                         Plaintiff,

v

OFFICER LEAH WESTRATE, individually, OFFICER JEFF STOLL, individually, OFFICER NATE DORNBOS, individually, BARBARA BERGERS, in her official capacity, DEPUTY BRIDGET SCHICKINGER, individually, JOSHUA GRANT, individually and in his professional capacity, ABSOLUTE SECURITY AND PROTECTIVE SERVICES, LLC, a Michigan Limited Liability Company, jointly and severally,

                         Defendants.

Case No:     1:12-cv-01056

Hon. Robert J. Jonker

**REPLY BRIEF IN SUPPORT OF DEFENDANT DEPUTY BRIDGET SCHICKINGER'S MOTION FOR SUMMARY DISPOSITION**

_____

     Defendant Ottawa County Deputy Bridget Schickinger, ("Deputy Schickinger"), by her attorneys, Silver & Van Essen, P.C., submits this Reply Brief in Support of her Motion for Summary Disposition on the basis of her Qualified Immunity.

     1.     In his brief, Mr. Poirier does not directly dispute that the United States Supreme Court has recognized that an officer arriving on the scene is free to rely on the factual reports of the investigating officers without cross examining them and without repeating their investigation. *See United States v. Hensley,* 469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

eXtra

2.      Mr. Poirier admits on page 13 of his brief that upon arriving at the scene Deputy Schickinger reviewed correctly the constitutional law in this context when discussing the facts at hand with the GVSU investigative officers; namely, that "…the officers could enter the apartment on plain view, with the alleged warrantless search clause, or they could obtain a warrant."

3.      It is undisputed that when she arrived on the scene as a security officer, she was told that the officers had seen drug paraphernalia in the house in plain view and that such a view justified their entry without a warrant.  (Plaintiff's Exhibit 6, p. 15).

4.      It is also undisputed that the GVSU officers reported to Deputy Schickinger that they believed the probationer on whom they were checking and who lived in the apartment, Brian Thompson, had consented to a warrantless search of his residence in his probation order and that this fact also justified their search of the apartment without a warrant.  (Plaintiff's Exhibit 6, p. 11).

5.      Mr. Poirier's brief mischaracterizes Deputy Schickinger's actions within the residence as "searching the apartment" (Brief, p. 3).  In truth, his citations for this representation are to her testimony that she went through the basement of the apartment with the sole purpose of making "sure there wasn't anyone down there" for safety reasons and to see if the probationer, Brian Thompson was located there.   There is no evidence at all that she performed a search for evidence:

Q.      When you say "for officer safety reasons," can you explain that?

A.      I don't know who might be down there with a gun or a knife o something that might harm me or my fellow officers.

(Plaintiff's Exhibit 6, p. 18, lines 17-20).    Plaintiff's own exhibit further demonstrates that after she didn't "see anyone down there" she promptly returned to the main living area of the apartment to maintain security.  This was her "sole" function on the night in question.

6.    Although Mr. Poirier's argument that Mr. Thompson had not consented to a warrantless search clause in his probation order is frivolous,[1] even if true it would miss the point in the same manner as his suggestion that whether or not the drug paraphernalia in the apartment was in plain view of the GVSU officers is off the mark.  Based on United States Supreme Court precedent, including *Hensley, supra,* Deputy Schickinger did ***not*** have to arrive at the scene and cross examine the investigative officers already present nor duplicate their investigation.  Yet, in demanding that Deputy Schickinger actually review the Thompson probation orders (a task that even now can't bring clarity in the lawyers' view[2]) and duplicate the GVSU officer's plain view sighting of the drug paraphernalia, Mr. Poirier is effectively requiring any back-up security officer to completely redo the original investigation.    Indeed, if Poirier is correct here, a back-up

---

[1] The argument is frivolous for several reasons.  First, a close review of the orders demonstrates that the only "probation order" is Exhibit 5.  Exhibits 6 and 7 are convictions for probation violations—the last one arising from the February 4, 2013 incident in question and as a result of which Thompson was sentenced to a year in jail.  Whether he received probation thereafter is not on the record.  After the January 25, 2012 conviction, it is apparent that Thompson served seven days in jail and then was returned to his original probation under the original probation order.  It is absurd to suggest that another probation order existed or that therein he received more lenient probation terms as a result of violating the first probation order.

[2] Mr. Poirier's view of the residence search clause in Exhibit 5 is not credible.  According to Mr. Poirier, who signed a similar consent, this only means that he has agreed to cooperate if probation officers have a warrant.  Michigan law requires him to do that.  Such an interpretation renders the consent meaningless.  The only possible meaning of Thompson's consent is that he was agreeing to a warantless search of his residence in circumstances confronting the GVSU officers—i.e. where they have reasonable suspicion.  Further, Mr. Poirier's reliance on *United States v. Carnes,* 309 F. 950 (20020 to distinguish *United States v. Knights,* 534 U.S. 112 (2001) is completely ineffectual.  *Carnes* did not involve a consent  to a greater search of his residence or of his person, which is certainly not true with Brian Thompson's consent in this case.

officer arriving on the scene is effectively in the position of *respondeat superior* to the investigating officers unless the arriving officer duplicates the investigative officers' investigation.  Such a position is wholly unprecedented, wholly unworkable to law enforcement and in direct conflict with *Hensley, supra.*

7.  Likewise, Mr. Poirier's urging that this Court ignore the United States Supreme Court's Opinion in *Hensley* on the basis of the Fifth Circuit Court of Appeals' post jury affirmation in *Melear v. Spears,* 862 F. 2d. 1177 (5th Cir. 1989) should be rejected out of hand.  Ignoring the use of a court of appeals case to discredit a United Supreme Court case, the fact of the matter is that the Fifth Circuit begins its discussion of *Melear* by noting that Deputy Avirett's appeal is "tied to the factual record."  862 F. 2d 1181.  Indeed it is.  Deputy Avirett was drunk and off duty when he, the city police chief and the city manager followed (using their own automobiles) the on-duty city policeman who had been talking to them (and who had also just knocked down a cold one) to the scene of a domestic disturbance.  The drunken volunteers were with the on duty cop during his investigation and then decided to follow him into an apartment building on the unfounded, naked belief that the suspect might be somewhere therein.  The drunken volunteers proceeded to assist the on duty officer in kicking in the doors of all the apartments and searching each for the suspect, even though no one was in imminent danger.  Although, the drunken Deputy Avirett apparently did not kick down the door of "one" of the plaintiffs' or enter that particular plaintiff's apartment, he apparently kicked in other apartment doors and conducted searches, including apparently knocking down

the other plaintiff's door and entering her apartment.[3]  Moreover, with respect to both plaintiffs, Deputy Avirett pointed his gun directly at them and—as noted above—since he had been with the on duty officer during his investigation, he should have known that there was absolutely no probable cause to search any of the apartments.   In contrast, in the present case, Deputy Schickinger was not drunk; she was on duty; she was using her official vehicle to arrive at the scene for security, purposes, only and she reasonably relied on the GVSU officer's reasonable reports of their past investigation after confirming that they understood constitutional limitations.  She never drew her weapon and only entered the premises after the GVSU officers opened an unlocked door.

8.     The issue is not whether there is a different qualified immunity standard for back-up officers.  The issue is what a reasonable officer performing that particular law enforcement role should know and expect.  Where the officer isn't drunk or off duty but arrives in her official capacity as a security back-up to a calm scene where the officers appear to understand the law and appeared to have performed their prior investigation in a rational matter and are proceeding in an orderly, nonviolent manner, and the officer has no reason to doubt the investigating officers' representations that they saw drug paraphernalia in plain view and that they are also operating on a consent to search the residence of one of the occupants, should she have known that she was violating another occupant's clearly established constitutional rights by following the GVSU officers into

_____

[3] The deputy only claimed to be a "back-up" to the Stewart search, not the Melear search.

the apartment to secure the scene?[4]    Under these facts and Supreme Court, there can be only answer to that question, "no."

<u>**CONCLUSION**</u>

This Court should conclude as a matter of law that Deputy Schickinger is entitled to qualified immunity and she should be dismissed from the case pursuant to Fed.R.Civ.P. 56.

**SILVER & VAN ESSEN, P.C.**
Attorneys for Ottawa County Deputy Schickinger

Date:  April 2, 2013                    By:_____

**BUSINESS ADDRESS & TELEPHONE:**
300 Ottawa Avenue, N.W. – Suite 620
Grand Rapids, MI  49503
(616) 988-5600

---

[4] Indeed, it appears as if Probationer Thompson—the object of the investigation—was convicted on the night in question of using marijuana and breaking his probation.  Thus, the GVSU investigation was fruitful.