UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

_____

CHRISTOPHER POIRIER,

                             Plaintiff,                       Case No. 1:12-cv-01056-RJJ

vs.                                            Hon. Robert J. Jonker

OFFICER LEAH WESTRATE,
individually, OFFICER JEFF STOLL,
individually, OFFICER NATE DORNBOS,
individually, BARBARA BERGERS,
individually, DEPUTY BRIDGET
SCHICKINGER, individually, JOSHUA
GRANT, individually and in his professional
capacity, ABSOLUTE SECURITY AND
PROTECTIVE SERVICES, LLC, a
Michigan Limited Liability Company,
jointly and severally,

**REPLY IN SUPPORT OF DEFENDANTS OFFICER LEAH WESTRATE, OFFICER JEFF STOLL, OFFICER NATE DORNBOS, AND BARBARA BERGERS' MOTION FOR SUMMARY JUDGMENT**

                          Defendants.

---

Joshua A. Blanchard (P72601)
Keeley D. Heath (P68661)
MIEL & CARR, PLC
Attorneys for Plaintiff
125 W. Main Street, P. O. Box 8
Stanton, MI 48888
(989) 831-5208 / Fax: (989) 831-8854
josh@mielcarr.com

Peter A. Smit (P27886)
Kyle P. Konwinski (P76257)
VARNUM LLP
Attorneys for Defendants Westrate, Stoll,
Dornbos, and Bergers
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
pasmit@varnumlaw.com
kpkonwinski@varnumlaw.com

Douglas W. Van Essen (P33169)
SILVER & VAN ESSEN, P.C.
Attorneys for Deputy Bridget Schickinger
300 Ottawa Avenue, N.W., Suite 620
Grand Rapids, MI 49503
(616) 988-5600
dwv@silvervanessen.com

Emily Ballenberger (P64410)
ZAUSMER KAUFMAN AUGUST CALDWELL &
TAYLER PC
Attorneys for Defendants Grant & Absolute
Security and Protective Services, LLC
31700 Middlebelt Rd., Ste. 150
Farmington Hills, MI 48334
(586) 783-7621
eballenberger@zkact.com

## I. Officer Stoll Obtained Reasonable Suspicion Where Plaintiff Did *Not* Have a Legitimate Expectation of Privacy.

Plaintiff's argument that Officer Stoll committed a Fourth Amendment violation when he obtained reasonable suspicion is unsupported factually and legally.

### A. Officer Stoll Made His Observations From the Common Lawn Area Surrounding the Apartment, Not by Lifting Himself Up Onto the Deck.

It must be clarified: Plaintiff's repeated assertion that Officer Stoll "approached the deck, lifted himself up, and looked through the four inch gap to gain a view into the apartment" *is completely unsupported by anything in the record*. Pl.'s Resp. at 8 [Dkt. #58]. At one point in his response, Plaintiff cites "Poirier Dep. Tr. 57:6-10" to support this assertion. *See id.* at 2. **Problematically, however, Chris Poirier never testified—neither on page 57 of his transcript nor anywhere else in his deposition—that Officer Stoll did this.** Tellingly, Plaintiff cites this <u>exact</u> deposition testimony for an entirely different factual assertion: that Officer Stoll <u>*at a later time*</u> pulled himself onto the Apartment's deck. *See id.*

In fact, Officer Stoll undisputedly made his observations from the common lawn open to everyone. *See* Stoll Report at 10 (explaining that he made his observations while "near the deck") (attached to GVSU Def.'s Mot. Summ. J. as Ex. B [Dkt. #55]). Officer Stoll reported that he saw a small group of male subjects standing on the Apartment's deck drinking what appeared to be canned beer, that he saw a case of Natural Light beer on the deck, and heard Thompson's named called. *Id.* Brian Thompson confirmed <u>all</u> of Officer Stoll's observations, down to the very kind of beer everyone was drinking (Natural Light). *See* B. Thompson Dep. Tr. 33:8–9, 35:15–23, 36:24–25, 37:9–19, **Ex. A**. Furthermore, while Thompson did not recall—several years back—whether anyone called his last name out loud, Thompson confirmed that some of the people at the Apartment that night *routinely* called him "Thompson." *Id.* at 69:21–70:2.

1

Plaintiff admitted that he could not dispute that Officer Stoll observed alcohol on the Apartment's deck from the common lawn area.  *See* Poirier Dep. Tr. 109:8–12, 118:5–12, **Ex. B**.  What is more, Plaintiff said that he remembered people being on the deck shortly before he locked the deck's door—*i.e.*, at about the time the GVSU Officer's arrived.  *Id.* at 66:21–23.[1]  In short, the only evidence in the record is that Officer Stoll made all of his observations from the common lawn area open to anyone, and no evidence exists otherwise.

### B.  Officer Stoll Did Not Implicate the Fourth Amendment from the Position He Obtained Reasonable Suspicion (the Common Lawn Area).

First, Plaintiff testified that he *himself* did not have an expectation of privacy in the common law area.  *See* Poirier Dep. Tr. 57:-1–5 (Ex. B).  Thus, Plaintiff has no subjective expectation of privacy from where Officer Stoll made his observations.  *See Katz v. United States*, 389 U.S. 347 (1967) (requiring a subjective expectation of privacy).

Second, Plaintiff did not have a reasonable expectation of privacy in the area from where Officer Stoll made his observations.  While the Fourth Amendment's protections extend to the curtilage of a home, "curtilage is defined not merely by location, but 'by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private.'"  *United States v. Smith*, 783 F.2d 648, 651 (6th Cir. 1986) (quoting *Oliver v. United States*, 466 U.S. 170 (1984)).[2]  No reasonable expectation of privacy exists in "open fields."  *Oliver*, 466 U.S. at 177.[3]

---

[1] Furthermore, what makes Plaintiff's unsupported allegations wholly unbelievable is that his allegations suggest three things were miraculously true at the same time: (a) people were on the deck, (b) Officer Stoll approached the deck and lifted himself up to the 4-inch gap, and (c) no one knew Officer Stoll was there.  *In other words, Plaintiff wants this Court to believe that no one in the Apartment saw Officer Stoll walk up to the deck and lift himself up to peer through the 4-inch gap.*

[2] In *Smith*, the Court noted that a person's own driveway did not constitute curtilage.  *Smith*, 783 F.2d at 651.  "No obstructions indicat[ed] any attempt to limit access to the area

The Court should consider the following four factors:

[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn*, 480 U.S. 294, 301 (1987) (finding no violation even where the officers crossed several perimeter fences to get to their vantage point).

Like *Smith*, no obstructions indicated any attempt to limit the access to the area around the Apartment. No effort had been made to screen off or enclose the area. The apartment complex does not delineate areas of the common lawn for each apartment. Thompson confirmed that the lawn area behind the house is an open field not protected by the Fourth Amendment:

> Q:  . . . Can you describe what's outside of the balcony? Is it just an open area, or trees, or land?
> A:  **It's an open field.** We were like the very corner apartment, so you'd walk down the side of our unit, turn the corner, our balcony was right here.
> Q:  **Could anyone walk in that area?**
> A:  **Yeah.**

Thompson Dep. Tr. 37:9–13 (emphasis added) (Ex. A). Plaintiff likewise testified that the common area is open to anyone. Poirier Dep. Tr. 57:3–5 (Ex. B). As described by Thompson, there is no difference between where Officer Stoll made his observations and other open fields.

---

around the house." *Id.* Furthermore, "[n]o effort had been made to screen off or enclose the area." *Id.* "Except for the distance from the house, there was no apparent difference between the area [where the police made their observations] and . . . other open fields." *Id.*

[3] Importantly, even taking Plaintiff's unsupported assertion that the area on which Officer Stoll made his observations is private property, this has no bearing on whether Officer Stoll violated Plaintiff's Fourth Amendment rights. *See Smith*, 783 F.2d at 652 ("Not every entry on private property by police officers is a Fourth Amendment violation even if there is an encroachment upon the curtilage."). "Only if there is a reasonable expectation of privacy . . . is the Fourth Amendment implicated." *Id.*; *see also Widgren v. Maple Grove Twp.*, 429 F.3d 575, 579–80 (6th Cir. 2005) ("[T]he general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment."). Thus, Plaintiff's distinction between whether the common lawn area is "public" or "private" is of no consequence.

*See* Thompson Dep. Tr. 37:9–13 (Ex. A).[4]  Simply, the common lawn area of an apartment complex is not an area that "harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." *Dunn*, 480 U.S. at 300.[5]

Therefore, Plaintiff's contention that Officer Stoll implicated Plaintiff's Fourth Amendment rights from the common lawn area of the Apartment's complex must be rejected.

## II. The GVSU Officers Only Needed Reasonable Suspicion to Enter the Apartment.

By considering all of the circumstances, Plaintiff had a diminished expectation of privacy in the Apartment.  Therefore, the GVSU Officers needed only reasonable suspicion to enter.

### A. Thompson and Plaintiff Were Probationers.

Without a doubt, the fact that not only one of the Apartment's residents was on probation, but two probationers lived at the Apartment, decreased Plaintiff's expectation of privacy.  *See Samson v. California*, 547 U.S. 843, 848 (2006) (noting that the *Knights* court concluded that probationers have a reduced liberty interest "by virtue of their status alone").

---

[4] While Officer Stoll was "near" the Apartment's deck, he was not even close enough for the residents and their guests to realize that the police were present.  Besides, "[t]he proximity of the area to the home [ ] is not the determinative factor as to whether an area is contained within the curtilage of a home."  *United States v. Raisor*, 9 F.3d 110, at *3 (6th Cir. Oct. 27, 1993) (unpublished) (finding entry onto an immediately adjacent air conditioning unit not be an entrance into curtilage).

[5] *See also, e.g., United States v. Perea-Rey*, 680 F.3d 1179, 1188 n.5 (9th Cir. 2012) ("[T]enants in an apartment building [or motel] have no justified expectation of privacy as to a portion of the home which all residents and visitors must use to enter, the common yard open to the public or the parking lot open to all users of the apartment building" (quotation omitted).); *United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999) ("We have rejected the notion of a generalized expectation of privacy in the common areas of an apartment building."); *Van Heck v. Cnty. of Macomb*, 2010 WL 5525364, at *5 (E.D. Mich. Aug. 9, 2010) ("Several courts have also concluded that a shared driveway is not part of the curtilage and that the expectation of privacy in the curtilage is reduced in multi-family housing units.").

**B.      Thompson Had a Broad and Unconditional Search Condition.**

Brian Thompson's order of probation states that Thompson "**shall . . . [s]ubmit to a search of residence, vehicle, or person as requested by any police or probation officer**." Similarly, in *United States v. Herndon*, 501 F.3d 683, 685 (6th Cir. 2007), Herndon had a probation condition that stated, "You consent to your Officer checking your computer and software at any time for Internet capability or activity."  Herndon argued that the search condition was limited to "public" spaces of his computer and did not permit inspection of "private" areas.  The Sixth Circuit rejected this argument because "[t]he public/private distinction Herndon urges us to adopt was not present in [the search condition], which provided for checks of Herndon's 'computer and any software,' without limitation . . . ."  *Herndon*, 501 F.3d at 690. Because the probationer had a search condition, the probation officer needed "no more than reasonable suspicion to conduct a check of Herndon's computer."  *Id.* at 691 (citing *Knights*).

In *United States v. Chirino*, 483 F.3d 141 (2d Cir. 2007), a probationer's search condition required him to "[p]ermit search of [his] vehicle and place of abode where such place of abode is legally under [his] control."  *Chirino*, 483 F.3d at 143.  The Second Circuit upheld the search of Chirino's bedroom based upon reasonable suspicion because (a) Chirino was a probationer with (b) a search condition.  *Id.* at 148.  *It was of no consequence that Chirino's search condition did not expressly state "with or without a warrant" or like language.*

**Like *Herndon* and *Chirino*, the "with or without a warrant" distinction Plaintiff urges the Court to adopt is not present in Thompson's search condition.**  Thompson's search condition has no limits.  It applies at all times.  Plaintiff says that Thompson's search condition still required the police to get a warrant.  According to Plaintiff's interpretation of this condition, it has absolutely no legal effect.  Plaintiff's interpretation would render Thompson's search condition completely superfluous.  This factor diminished Plaintiff's expectation of privacy.

**C.**    **Thompson Told Plaintiff that the Police Could Search the Apartment** *at Any Time, With or Without a Warrant***.**

Plaintiff and Thompson probably never sat down and analyzed case law to determine the distinguishing characteristics of Thompson's search condition from the one in *Knights* or *Carnes*. But they did discuss what *they* thought it meant.  Thompson expressly told Plaintiff that the Apartment was subject to a search *at any time without a warrant*:

Q:    Did you discuss [being on probation] with any of your roommates?
A:    Yeah.
Q:    Who did you talk to about that?
A:    All of them.  They were all aware I was on probation.
Q:    What did you tell them about that?
A:    **They were aware that part of my probation – well, I told them that searches and seizures <u>at any time without a warrant</u> are part of my probation.**

Thompson Dep. Tr. 24:1–17 (Ex. A).  Plaintiff was in this conversation.  *Id.* 27:19–28:12.

Thus, a probationer (like Plaintiff), who was told that his probationer roommate was subject to searches at any time without a warrant, had a diminished expectation of privacy.

**D.**    **Plaintiff Violated Probation Once Before.**

Prior to the incident in question, and already on probation, Plaintiff was arrested and found to have violated his probation for minor in possession of alcohol.  Poirier Dep. Tr. 44:19–45:25 (Ex. B).  Once again, the Court should consider this as a circumstance diminishing Plaintiff's expectation of privacy in the Apartment.  *See United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005) (finding a probationer's "expectation of privacy" to be "further reduced because of his actions while on probation" such as "violat[ing] terms of his release").

**E.**    **Thompson Already Violated His Probation Once Before.**

Similarly, in late January 2012, a mere few weeks before the incident in question occurred, Thompson violated probation.  Thompson Dep. Tr. 15:9–12 (Ex. A).  Even after Thompson violated probation, all of his probation requirements, including his search condition,

remained in effect. *Id.* 18:10–19:1. Again, the fact that Thompson recently violated his probation is another circumstance that diminished Plaintiff's expectation of privacy. *See Yuknavich*, 419 F.3d at 1310. In sum, the GVSU Officers did not violate the Fourth Amendment by entering the Apartment pursuant to reasonable suspicion.

Not only did the GVSU Officers not violate Plaintiff's constitutional rights, but in light of clearly established law, the GVSU Officers *certainly* did not act objectively unreasonable. "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is <u>directly</u> on point." *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010). In light of the Second Circuit's decision in *Chirino*, there can be no doubt that the GVSU Officers did not act objectively unreasonable. Thus, the GVSU Officers are entitled to qualified immunity on Counts I and II.

**III.  <u>Thompson Consented to a Suspicionless Search and Thus No Warrant Was Needed</u>.**

The GVSU Officers also legally entered the Apartment pursuant to Thompson's consent to a suspicionless search. Plaintiff does not cite a single case showing that language in a probationer's search condition <u>must</u> contain the language "with or without a warrant." And if the law is not clearly established, then the GVSU Officers are entitled to qualified immunity.

Furthermore, the fact that the GVSU Officers did not "request" Thompson's consent does not matter. *See United States v. Carter*, 511 F.3d 1264, 1268–69 (10th Cir. 2008). Thus, the GVSU Officers did not have to "request" and Thompson did not have to "submit" to the search before the GVSU Officers entered the Apartment.[6] Thus, the GVSU Officers did not act objectively unreasonable and are entitled to qualified immunity on Counts I and II.

---

[6] In any event, Thompson said the Officers *did* "request" entrance into the Apartment. See B. Thompson Dep. Tr. at 94:24–95:1 (Ex. A).

## IV.  **A Search of a Residence Includes Anywhere Not Expressly Differentiated as Not Part of that Residence.**

"An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify [the] action.  The officer's subjective motivation is irrelevant."  *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (internal quotation and citation omitted, attention in original).  Moreover, an officer's conduct must be judged "in light of the information available to them at the time they acted."  *See United States v. Mousli*, 511 F.3d 7, 12 (1st Cir. 2007).  Furthermore, there is no doubt that a search of Thompson's "residence" lawfully extended to all rooms of his "residence" including his bedroom.  *See Chirino*, 483 F.3d at 148 (upholding a warrantless search of probationer's bedroom where defendant's conditions of probation required him to permit probation officers to search his residence); *Johnson v. Weaver*, 248 F. App'x 694, 699–700 (6th Cir. Sept. 24, 2007) (consent to search extended to private areas of home even after object of search was found).[7]

Given the clearly established law and the information that the GVSU Officers had *at the time they acted*, the GVSU Officers did not act objectively unreasonable by entering into Plaintiff's room.  Nothing on the upstairs doors indicated whose room was whose.  Poirier Dep. Tr. 55:25–56:1  (Ex. B); *see also* Thompson Dep. Tr. 20:22–24, 22:20–21, 23:1–3 (Ex. A). Moreover, no one indicated to the GVSU Officers in any way that they were not entering Thompson's room.  *See* Poirier Dep. Tr. 73:24–74:6 (Ex. B).  Deputy Schickinger was the only

---

[7] *See United States v. Fleck*, 413 F.3d 883, 892 (8th Cir. 2005) (consent to search house included the bedroom); *United States v. Coffman*, 148 F.3d 952, 953 (8th Cir. 1998); *United States v. Moran*, 214 F.3d 950, 951 (8th Cir. 2000); *United States v. Glover*, 583 F. Supp. 2d 5, 20 (D.D.C. 2008) (finding a search of a bedroom to be appropriate because nothing indicated that the consentor excluded the bedroom); *United States v. Wilding*, 2008 WL 1881933, at *8 (E.D. Mo. Apr. 24, 2008) ("Defendant's argument that even if he consented to a search of the residence, he did not include the bedroom and safe, is without support in the record and defies common sense.  There is no evidence that defendant excluded the bedroom from the search.").

officer who went downstairs; and by the time she finished her protective sweep, the GVSU Officers were on their way to the middle floor from the upstairs.  Schickinger Dep. Tr. 65:6–9, 18:24–19:11, **Ex. C**.  So, even if Thompson's room had his name on it *downstairs*, the GVSU Officers did not have this information *at the time they acted*.[8]  In other words, the GVSU Officers could enter Plaintiff's room because it could have been part of Thompson's "residence."

**V.     The Officers Lawfully Entered Plaintiff's Room and Closet as a Protective Sweep.**

First, Plaintiff is incorrect that whether the GVSU Officers were in "danger" or had reason of danger is required for a protective sweep.  *See Maryland v. Buie*, 494 U.S. 325, 334 (1990).  Second, the protective sweep *does* extend to the bedroom's closet because a protective sweep extends to anywhere a person may be found.  *Id.* at 335.  Third, Plaintiff's bedroom *is* immediately adjacent to the bathroom where Thompson was found.  *See* Pl's Resp. Mot. Summ. J. at Ex. 4 at (Page ID#739) [Dkt. # 59-4].[9]  Again, the GVSU Officers did not act objectively unreasonable by conducting a protective sweep of Plaintiff's room and closet.

**VI.    The GVSU Officers Lawfully Questioned Plaintiff to Investigate Whether He Was Engaging in Criminal Activity.**

Plaintiff essentially concedes that the GVSU Officers had reasonable suspicion to question Plaintiff to investigate whether criminal activity was taking place.  *See id.* at 21–22.  Plaintiff says, however, that the officers seized Plaintiff for too long.  Plaintiff is incorrect.  The *questioning* of Plaintiff only took so long for the Officers to determine that Plaintiff had been

---

[8] Besides, given all of the factors discussed in Part II above, Plaintiff had a diminished expectation of privacy in his bedroom.  The GVSU Officers only needed reasonable suspicion to search Plaintiff's room, notwithstanding the fact that the GVSU Officers thought they were entering Thompson's room.  After legally entering, the police saw drugs and alcohol in an apartment known to have students under the age of 21.  A search of Plaintiff's room was proper.

[9] And Plaintiff's room was in between where Thompson was found and the stairs, further justifying a protective sweep to prevent an attack as the Officers walked past the room.

drinking. Plaintiff and Thompson both testified that the GVSU Officers asked basic questions to dispel or confirm their reasonable suspicion. *See* Poirier Dep. Tr. 77:4–79:19 (Ex. B); Thompson Dep. Tr. 51:10–14 (Ex. A). Plaintiff never said he tried to leave and he admitted that he was never restrained. Poirier Dep. Tr. 77:6–7. The GVSU Officers certainly did not act objectively unreasonable in light of clearly established law. *See Sutton v. Metrop. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 874 (6th Cir. 2012) (an officer can seize to dispel the officer's suspicions).

**VII. No One Conspired to Violate Plaintiff's Constitutional Rights.**

Plaintiff's response brief is filled with pure conjecture and no legal support. For all of the reasons set forth in the GVSU Defendants' initial brief, Count V must be dismissed.

**VIII. Chief Bergers Cannot Be Liable for Failure to Train.**

Not a shred of evidence exists to suggest that Chief Bergers failed to train the GVSU Officers. Nor does *any* evidence exist that Chief Bergers was *deliberately indifferent* to improperly trained GVSU officers. Third, Plaintiff says that Chief Bergers can supposedly be liable in other ways besides a failure to train GVSU Officers, but Plaintiff fails to state any legal or factual support how so. Most glaringly, Plaintiff has no evidence that Chief Bergers took some affirmative act to encourage any alleged constitutional violations. Thus, Chief Bergers must be dismissed. *See Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008).

Respectfully submitted,

Varnum LLP
Attorneys for Westrate, Stoll, Dornbos, and Bergers

Date: July 1, 2013

By: /s/ Kyle P. Konwinski
Kyle P. Konwinski (P76257)
Business Address, Telephone, and E-mail:
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
kpkonwinski@varnumlaw.com